UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Clarus Medical, LLC,

    Plaintiff and Counterclaim Defendant,

v.

Inspectrum Inc.,

    Defendant and Counterclaim Plaintiff.

File No. 24-CV-03882 (JMB/ECW)

**ORDER**

Bryant D. Tchida and Austin J. Malinowski, Moss & Barnett PA, Minneapolis, MN, for Plaintiff and Counterclaim Defendant Clarus Medical, LLC.

Matthew D. Sloneker, Lauren Hoglund, and Sean Kelly, Lind Jensen Sullivan & Peterson, PA, Minneapolis, MN, for Defendant and Counterclaim Plaintiff Inspectrum Inc.

    This matter is before the Court on Plaintiff and Counterclaim Defendant Clarus Medical, LLC's (Clarus) motion, entitled "Motion to Compel Arbitration and Compliance with Contractual Dispute Resolution Provisions." (Doc. No. 12.) In this action, Clarus and Defendant and Counterclaim Plaintiff Inspectrum Inc. (Inspectrum) entered into a contractual relationship by which they agreed to collaborate on the development, marketing, and sale of a software product. After the relationship soured, Clarus attempted to invoke a contractual auditing procedure, which Inspectrum resisted. Clarus sued Inspectrum, and Inspectrum asserted contract- and tort-based counterclaims. Clarus now seeks to compel Inspectrum to follow the contractual auditing procedure and to compel arbitration of the remaining claims. For the reasons explained below, the Court denies the

1

motion in part, grants the motion in part, refers this action in its entirety to arbitration, and stays the matter pending arbitration.

## BACKGROUND

### A.     The Parties' Contractual Relationship

Clarus and Inspectrum conduct their business in the medical-device industry; Clarus develops medical devices and Inspectrum develops software that is used in medical devices. (*See* Doc. No. 1-1 [hereinafter, "Compl."] ¶¶ 5-6.)  In July 2023, the parties entered into a Collaboration Agreement (Agreement) to govern the terms of their collaboration on a project to develop, market, and commercialize a jointly developed software product (Product).  (*See* Doc. No. 23 [hereinafter, "Agmt."]; Compl. ¶ 7; Doc. No. 9 [hereinafter, "Counterclaim"] ¶ 44.)  Broadly, the Agreement contemplated that Clarus would be responsible for the commercialization, sale, and marketing of the Product, and that Inspectrum would be responsible for developing the Product into a saleable format. (Doc. No. 33 ¶ 2; Doc. No. 30 ¶ 3.)

The Agreement has two dispute resolution sections: First, Section 5.6 governs revenue-related disputes.  Specifically, its scope covers "any dispute or disagreement regarding the calculation, allocation, or distribution of revenue."  (Agmt. § 5.6(A).)  When such a dispute arises, the parties are required to "first attempt to resolve [it] by retaining an independent auditor," whose decision "shall be final and binding."  (*Id.* § 5.6(A), (C).)

Second, Section 13 governs disputes generally.  Its scope is very broad and reads as follows:

> Unless otherwise provided in this Agreement or in a Project Plan, any dispute, difference, claim, action, demand, request, investigation, controversy, threat or other question arising out of or relating to interpreting this Agreement or Project Plan, or failing to comply with the obligations under this Agreement or Project Plan (a "Dispute") will be resolved in accordance with the provisions of this Section 13.

(*Id.* § 13.1.)  Section 13 also contemplates that an arbitrator would have authority to enforce—including by ordering specific performance of—all provisions of the Agreement. (Agmt. § 13.4(C).)  To invoke arbitration under Section 13, the parties must provide the other with written notice of a dispute and attempt to negotiate a resolution in good faith; thereafter, if the parties cannot resolve the dispute on their own, it is referred to non-binding mediation; and, if mediation is also unfruitful, the dispute is to be resolved through binding arbitration.  (*Id.* §§ 13.2–13.4.)  The Section provides that, generally, the parties may bypass arbitration and commence litigation in court in only two circumstances: (1) to toll any applicable statute of limitations if commencing arbitration would not do so; or (2) to seek emergency injunctive relief.  (*Id.* § 13.5.)

### B. The Parties' Disputes

In time, the parties' relationship deteriorated.  In September 2024, Clarus sued Inspectrum in Hennepin County District Court.  (Doc. No. 1-1 at 1–2.)  In the Complaint, Clarus alleges as follows:

- In June 2024, the parties agreed that Inspectrum would provide certain deliverables created under the Agreement—including "accounts, intellectual property, source code, data, and other technology"—to Clarus.

- Inspectrum refused to carry out the transfer until Clarus remunerated it for alleged outstanding invoices owed by Clarus under the Agreement.

3

- Claus requested financial information from Inspectrum so that it could complete a "true-up" of claimed expenses.

- Clarus asserted that Inspectrum owed it nearly $70,000.

- Inspectrum declined to provide requested financial information so that Clarus could conduct an accurate true-up.

- Clarus invoked Section 5.6 of the Agreement by sending Inspectrum a Notice for Audit Dispute Resolution, which "notified Inspectrum that it had not received various standard accounting information or supporting documents necessary to reconcile Inspectrum's accounting records."

- Inspectrum declined to participate in the dispute resolution process contemplated by Section 5.6 on grounds that the parties' dispute was not covered by Section 5.6. Instead, Inspectrum provided Clarus with documentation showing that Clarus owed Inspectrum approximately $72,000.

(Compl. ¶¶ 13–21.) Clarus alleges that Inspectrum breached the Agreement by refusing to participate in the dispute resolution procedure contemplated by Section 5.6 because the parties' invoicing and financial documentation dispute was a bona fide disagreement about revenue and expenses. (*See id.* ¶¶ 34–38.) The Complaint raises three claims. In Count I, Clarus seeks a declaratory judgment that Section 5.6 applies to the parties' underlying invoicing and documentation dispute. (*See id.* ¶¶ 26–33.) In Count II, Clarus raises a claim for specific performance of the obligations set forth in Section 5.6, namely, participation "in the Audit Dispute Resolution Procedure set forth in the Agreement." (*Id.* ¶¶ 34–38.) In Count III, Clarus requests contract-based attorney fees and costs incurred as a result of the alleged breach of Section 5.6. (*Id.* ¶¶ 39–43.)

Inspectrum removed the suit to federal court and filed a Counterclaim. (*See* Doc. No. 9.) In its Counterclaim, Inspectrum alleges as follows:

4

- Clarus did not carry out its contractual obligations related to commercialization, marketing, and sale of the Product.

- Inspectrum was forced to incur certain costs to complete tasks that were Clarus's responsibility under the Agreement.

- Clarus has continued to develop the product, in violation of the Agreement, and, in doing so, Clarus has used information from patents created under the Agreement.

- Clarus filed patent applications without prior notice to Inspectrum, in violation of the Agreement and, in doing so, published Inspectrum's confidential information and trade secrets.

(Counterclaim ¶¶ 54–72.)  Inspectrum asserts two contract claims and two tort claims for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, and tortious interference with prospective economic advantage.  (*Id.* ¶¶ 73–95.)

## DISCUSSION

Clarus now makes the following two requests: (1) Clarus moves to compel "compliance with contractual dispute resolution provisions" set forth in Section 5.6; and (2) Clarus moves to compel arbitration of all remaining issues (specifically, Inspectrum's Counterclaims and Clarus's own "non-audit claims" under Section 13 of the Agreement).[1] (Doc. No. 14 at 1; Doc. No. 12; *see also* Doc. No. 17 at 2–3 (proposed order).)  Inspectrum opposes the motion on grounds that the parties' disputes in Counts I and II do not fall within

---

[1] It is not clear what Clarus means by the term "non-audit claims."  Although portions of the written and oral arguments suggest that this term refers to claims that Clarus has not yet raised, the Court will construe this term as a reference to Count III, despite the fact that this count, like Counts I and II, is related to the audit provisions of Section 5.6: it seeks to recover "all losses, costs, expenses, damages, fees or liabilities Clarus suffered arising out of Inspectrum's breach" of Section 5.6.  (Compl. ¶ 40.)

5

the scope of Section 5.6 and that Clarus waived its right to arbitrate by commencing litigation in court. (*See* Doc. No. 28 at 1–2.)

The Federal Arbitration Act (FAA) permits litigants to use arbitration instead of the courts to resolve their disputes by promoting a "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see also* 9 U.S.C. § 2. The FAA provides that written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That being the case, "[a] court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Triplet v. Menard, Inc.*, 42 F.4th 868, 870 (8th Cir. 2022). If indeed a valid agreement that covers the dispute exists, then "[a] court must grant a motion to compel arbitration." *3M Co. v. Amtex Sec., Inc.*, 542 F.3d 1193, 1998 (8th Cir. 2008). A party opposing arbitration "bears the burden of showing either that the arbitration provision is invalid or that it does not encompass the claims at issue." *Triplet*, 42 F.4th at 870. The Court analyzes a motion to compel arbitration under the standard applicable to motions for summary judgment because, to adjudicate the motion, the Court considers matters outside of the pleadings. *See City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 880–82 (8th Cir. 2017); *see also* Fed. R. Civ. P. 56(a). Under this standard, courts view the evidence and draw all justifiable inferences in favor of the non-moving party." *Ludwig v. Anderson*, 54 F.3d 465, 470 (8th Cir. 1995).

For the reasons discussed below, the Court concludes that the case should be stayed pending arbitration of all issues raised in the Complaint and Counterclaims.

I.   **ARBITRABILITY OF THE PARTIES' COMPETING INTERPRETATIONS OF SECTION 5.6**

Clarus asks the Court to "order Inspectrum [to] comply with the Audit Dispute Resolution procedure set forth in Section 5.6 of the Agreement" to resolve their disagreement about invoicing and financial documentation. (Doc. No. 14 at 12–13.) The Court declines to do so for two reasons.

First, Clarus's request to order Inspectrum's compliance with Section 5.6 is improper at this stage. The ultimate relief requested in Count I is a declaration that the parties' invoicing and documentation dispute falls within the scope of Section 5.6, and Count II seeks an order requiring Inspectrum's specific performance of the obligations set forth in Section 5.6. (*See* Compl. ¶¶ 26–38.) However, the Court cannot distinguish this ultimate relief from the effect of granting Clarus's motion to compel Inspectrum to comply with the provisions of Section 5.6. In this way, the motion seeks to obtain effectively final judgment when the litigation has scarcely begun. The Court declines this request.

Second, an arbitrator, not the Court, should decide whether Section 5.6 applies to the parties' underlying invoicing and documentation dispute. Section 13 requires the parties to arbitrate disputes relating to the interpretation of the Agreement:

> Unless otherwise provided in this Agreement[2] or in a Project Plan, any dispute, difference, claim, action, demand, request,

---

[2] The parties' disagreement about the nature of the invoicing dispute and whether that dispute falls into Section 5.6's scope is not excepted from Section 13's purview by this "[u]nless otherwise provided" language. Section 5.6 provides a mechanism for the

7

> investigation, controversy, threat or other question arising out of or relating to interpreting this Agreement or Project Plan, or failing to comply with the obligations under this Agreement or Project Plan (a "Dispute") will be resolved in accordance with the provisions of this Section 13.

(Agmt. § 13.1.)  The parties' disagreement regarding whether the alternative dispute mechanism of Section 5.6 applies to their underlying invoicing and documentation dispute is a "dispute, difference . . . or other question" that "relat[es] to interpreting th[e] Agreement," and, therefore, is subject to the arbitration provisions of Section 13. (*Id.*)  The Court declines to decide an issue that the parties have agreed to arbitrate.

For both of these reasons, the Court denies Clarus's request to compel specific performance with Section 5.6 and, as further explained *supra*, refers the issue to arbitration in accordance with Section 13.

## II.   ARBITRABILITY OF THE REMAINING ISSUES

Clarus argues that Section 13 requires Inspectrum's Counterclaims and non-audit claims to be arbitrated.[3]  (Doc. No. 14 at 14.)  In response, Inspectrum argues that Clarus waived its contractual right to enforce the arbitration provision when it filed this lawsuit in court.  (Doc. No. 28 at 8–10.)  As discussed below, the Court concludes that Clarus's

---

resolution of a qualifying dispute.  The question whether a dispute is a qualifying one is clearly a "dispute, difference, . . . controversy, . . . or other question arising out of or relating to interpreting th[e] Agreement."  (Agmt. § 13.1.)

[3] As noted above, Clarus refers throughout its legal memoranda to "non-audit claims" even though this term is unclear.  The Court construes this term as referring to Count III.

litigation conduct was not sufficient to constitute waiver and grants Clarus's motion to compel arbitration.[4]

Arbitration is a waivable contractual right, *Messina v. N. Cent. Distrib., Inc.*, 821 F.3d 1047, 1050 (8th Cir. 2016), meaning that it can be intentionally relinquished or abandoned. *H&T Fair Hills, Ltd. v. Alliance Pipeline L.P.*, 76 F.4th 1093, 1099–1100 (8th Cir. 2023) (defining "waiver" as the "intentional relinquishment or abandonment of a known right" (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417 (2022))). To determine whether waiver has occurred, courts apply the following two-prong inquiry: (1) whether that party "knew of an existing right to arbitration"; and (2) whether the party "acted inconsistently with that right." *Breadeaux's Pisa, LLC v. Beckman Bros., Ltd.*, 83 F.4th 1113, 1117 (8th Cir. 2023); *see also In re Pawn Am. Consumer Data Breach Litig.*, 108 F.4th 610, 613 (8th Cir. 2024) (explaining that the U.S. Supreme Court eliminated the Eighth Circuit's prior arbitration-waiver test, which also considered prejudice to the opposing party). A party acts inconsistently with its right to arbitrate when it "substantially invoke[s] the litigation machinery." *Id.* at 615. Examples of conduct that indicates

---

[4] As a threshold matter, the Court first determines that Section 13 is a valid arbitration clause that applies to the disputes raised in both Count III and the Counterclaims. *See Triplet*, 42 F.4th at 870. Both parties signed the Agreement and neither party disputes the validity of the arbitration agreement. (*See* Agmt. § 13.) Thus, the Court concludes that Section 13 is a valid agreement to arbitrate. In addition, Section 13 is expansive; it covers "any dispute, difference, claim, action, demand, request, investigation, controversy, threat or other question arising out of or relating to interpreting this Agreement or Project plan, or failing to comply with the obligations under this Agreement or Project Plan," and effectively excludes only actions for emergency injunctive relief. (*Id*. §§ 13.1 , 13.5.) The Counterclaims comprise contract and tort claims related to the parties' entrance into and performance under the Agreement, and Count III seeks recovery of costs under the Agreement's indemnification provision. Section 13 covers these disputes.

substantially invoking litigation machinery include when a party files a lawsuit on arbitrable claims, engages in extensive discovery, and fails to move to compel arbitration and stay litigation in a timely manner. *Donelson v. Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1087 (8th Cir. 2021).[5] Additionally, "any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Id.*

Here, the parties do not dispute the first prong: that Clarus knew of its right to arbitrate during the relevant time of its litigation conduct. They dispute only the second: whether Clarus's litigation conduct substantially invoked litigation machinery. Clarus filed a Complaint that asserted arbitrable claims,[6] and in doing so, acted inconsistently with its right to arbitrate. *Id.* at 1087 ("Requesting that a court dispose of a case on the merits before reaching arbitration is inconsistent with resolving the case through arbitration and also counts as substantially invoking the litigation machinery.") (quotation omitted).

---

[5] Recent Eighth Circuit cases set forth this list of conduct in the disjunctive ("or"). *See Breadeaux's Pisa*, 83 F.4th at 1117; *Donelson*, 999 F.3d at 1087; *Lewallen*, 487 F.3d at 1090; *Maggie King, Inc. v. ABC Bus. Cos.*, 713 F. Supp. 3d 550, 557 (D. Minn. 2024). However, this quote can be traced back to *Stifel, Nicolaus & Co. v. Freeman*, 924 F.2d 157 (8th Cir. 1991), where the list is set forth in the *conjunctive* ("and"): "[Defendants] assert [plaintiff] acted inconsistently with this right . . . when it filed the original lawsuit, engaged in discovery on arbitrable claims, *and* failed to move to compel arbitration until six months after the suit was filed." *Id.* at 158 (emphasis added). In *Stifel*, the Court found waiver because "[plaintiff] acted inconsistently with its right to arbitration by initiating litigation *and* participating in discovery on arbitrable claims." *Id.* (emphasis added).

[6] As noted above, Section 13's broad language requires arbitration of "any dispute, difference, . . . request, . . . or other question arising out of or relating to interpreting this Agreement . . . or failing to comply with the obligations under this Agreement." (Agmt. § 13.1 .) Further, Section 13 provides that "the arbitrators have full authority to implement the provisions of this Agreement . . . and to fashion appropriate remedies for breaches [] including specific performance." (*Id.* § 13.4(C).) All three of the claims raised in Counts I–III plainly fall within the scope of Section 13.

However, Clarus also promptly filed a motion to compel arbitration, so this Court must determine whether the totality of Clarus's conduct substantially invoked the "litigation machinery."

No known caselaw in this District supports the conclusion that the right to arbitrate is waived by virtue of filing a complaint that includes arbitrable claims and then promptly thereafter moving to compel arbitration. In fact, available caselaw supports the opposite conclusion. For example, in *Andersen v. Equity Trust Co.*, No. 18-CV-0471 (DWF/LIB), 2018 WL 4623071, (D. Minn. Sept. 26, 2018), plaintiff filed a breach-of-contract claim against defendant in court. *Id.* at *1. Defendant moved to transfer venue; in response, plaintiff moved to compel arbitration of its own claims. *Id.* The Court rejected defendant's arguments that plaintiff had waived its right to arbitrate by virtue of having initiated in-court litigation in the first place. *Id.* at *4. The Court concluded as follows:

> While filing a lawsuit may be inconsistent with a party invoking a right to arbitration, in this case Plaintiff filed his motion to compel arbitration less than a month after [defendant] removed his lawsuit to federal court. This does not constitute a failure to secure his arbitration rights in a timely manner. Moreover, any doubts about waiver must be resolved in favor of arbitration. The parties have not yet engaged in any discovery and while they have engaged in substantial motion practice, much of that motion practice has involved the issue of whether the Court should compel arbitration. Under the facts and circumstances of this case, the Court concludes that Plaintiff has not waived enforcement of the arbitration provision.

*Id.* (cleaned up); *see also Pioneer Power, Inc. v. St. Paul Park Refining Co. LLC*, No. 18-CV-1586 (JRT/HB), 2018 WL 7575200, at *2–3 (D. Minn. Oct. 16, 2018) (concluding that the party who initiated the suit did not waive its right to arbitrate because it promptly sought

11

to enforce arbitration rights), *report and recommendation adopted*, 2019 WL 446568 (d. Minn. Feb. 5, 2019).

Waiver requires more than simply filing a complaint; it requires lengthy delays in seeking arbitration or engagement motion practice or discovery. *See, e.g.*, *Breadeaux's Pisa*, 83 F.4th at 1115–18 (concluding plaintiff waived right to arbitrate after moving to compel arbitration after having substantially invoked the litigation machine by bringing a motion for a preliminary injunction and engaging in discovery); *Lewallen*, 487 F.3d at 1090–93 (concluding party waived right to arbitrate after having served discovery requests); *Superior Edge, Inc. v. Monsanto Co.*, 964 F. Supp. 2d 1017, 1048–49 (D. Minn. 2013) (finding plaintiff waived right to arbitrate by filing suit in court and seeking preliminary injunction on factual and legal issues that are intertwined with arbitrable claims in suit); *Webster Grading, Inc. v. Granite Re, Inc.*, 879 F. Supp. 2d 1013, 1019–20 (D. Minn. 2012) (finding plaintiff waived right to arbitrate by filing suit in court, serving demand for arbitration ten months later, and moved to compel arbitration five months after that). Thus, although Clarus knew of and acted inconsistently with its right to arbitrate, its litigation conduct was not "substantial" so as to result in waiver of its right to arbitrate.

Because Clarus has not waived its right to invoke the arbitration provisions in Section 13 of the Agreement, the Court orders the parties to arbitrate all claims in this lawsuit in accordance with Section 13's terms.

**ORDER**

Based on the foregoing, and on all of the files, records, and proceedings herein,

IT IS HEREBY ORDERED THAT:

1. Clarus's Motion to Compel Arbitration and Compliance with Contractual Dispute Resolution Provisions is GRANTED in part and DENIED in part as follows:

    a. Clarus's motion to compel Inspectrum's compliance with the dispute resolution provision in Section 5.6 of the Collaboration Agreement is DENIED.

    b. Clarus's motion to compel Inspectrum to arbitrate is GRANTED. All claims of all parties in this action are hereby referred to arbitration consistent with the arbitration provisions in Section 13 of the Collaboration Agreement.

2. The proceedings are STAYED pending arbitration.

3. The parties are ordered to provide the Court with a joint letter every 90 days to keep the Court apprised of the status of arbitration.

Dated: April 10, 2025

/s/ *Jeffrey M. Bryan*
Judge Jeffrey M. Bryan
United States District Court